## UNITED STATES v. MARTEL.
### No. 273.

Circuit Court of Appeals, Second Circuit.
April 10, 1939.

Harold H. Corbin, of New York City (Mark F. Hughes and Thomas J. Namack, both of New York City, of counsel), for appellant.

Gregory F. Noonan, of New York City (Frank H. Gordon and Robert L. Werner, both of New York City, of counsel), for the United States.

Before L. HAND, CHASE, and PATTERSON,. Circuit Judges.

PATTERSON, Circuit Judge.

The appellant was indicted in three counts: first, for concealing assets of a value of $25,000 from his trustee in bankruptcy, second, for concealing books, records and papers, third, for withholding books, records and papers. He was convicted on the first count and acquitted on the others. On appeal from the conviction, he insists that the evidence on the first count was insufficient to take the case to the jury and that the trial court should have granted his motion for a directed verdict of acquittal.

The appellant filed petition in bankruptcy on October 7, 1936. In his schedules he listed exempt wearing apparel as his only asset. A trustee in bankruptcy was appointed on April 2, 1937. The appellant had been for some years in the retail automobile business. In February, 1935, he formed a company, Charles L. Martel, Inc., to engage in the business of selling used automobiles. He was the only stockholder. At first the company discounted commercial paper with a concern in Philadelphia which kept track of operations, but early in July, 1935, business relations were severed. From that time forward the appellant had sole supervision of the business as well as sole stock ownership, and it is from that time that the series of acts commenced which according to the government culminated in the concealment of property from the trustee in bankruptcy. On July 5, 1935, a bank account in the name of the appellant's wife, Ruth Martel, was opened in the National City Bank. The wife was not engaged in business and apparently had no income of her own. Deposits of large sums were made in the bank account. By the end of the first month the deposits exceeded $7,000, and eventually, before the account was closed in early 1937, the deposits amounted to $40,000. The government was unable to prove the source of many deposits. It did prove, however, that in July, 1935, three deposits of $750, $850 and $700 represented proceeds of sale of automobiles sold by the appellant either in his own behalf or in that of Charles L. Martel, Inc.

In September, 1935, a new company, Martel Motors, Inc., was formed by the appellant and one Sayegh, the appellant taking the common stock and Sayegh the

preferred. Martel Motors, Inc., took over the business formerly conducted under the name of Charles L. Martel, Inc., which then faded out of the picture. The new company continued in business until late December, 1935, when a receiver was appointed by the state court in a stockholder's suit brought by Sayegh. The assets were later sold by the receiver, and this was the last of Martel Motors, Inc. During the three months of active existence of Martel Motors, Inc., deposits continued to flow into the bank account maintained in the wife's name. In at least four instances persons who purchased automobiles at the premises of Martel Motors, Inc., made checks payable to the appellant, and the checks, $4,200 in amount, were deposited in the bank account. After the appellant's connection with Martel Motors, Inc., had been severed, three more amounts paid by purchasers of automobiles sold by the appellant, totalling $2,600, were deposited in the account. None of the books or records of Charles L. Martel, Inc., and Martel Motors, Inc., could be found.

In March, 1936, the appellant brought about the formation of a new company, Commercial Industrial Corporation, to engage in the financing of automobile purchases. He had no visible connection with the business. The president and sole stockholder was R. Levin, standing for Ruth Levin, the maiden name of the appellant's wife; the other officer was his father-in-law. Neither of them gave personal attention to the business. The appellant ran the business. $17,000 was invested in the company. The greater part of this money, if not all of it, was drawn from the Ruth Martel bank account. The company was still in active business in April, 1937, when the trustee in bankruptcy of the appellant's estate was appointed.

The appellant took the stand in his own behalf, but gave no credible explanation of his financial operations. The deposits directly traced were said by him to represent to some extent repayment of loans made to him by his wife and to some extent mere cashing of checks for convenience. But he conceded that no record was kept of any loans made by the wife, beyond a mental record, and the transcript of the bank account itself showed that the deposits did not represent check-cashing transactions. No explanation was attempted as to any deposits not traced.

■ The trial court put it to the jury to say whether the beneficial interest in the Commercial Industrial Corporation belonged to the appellant, and if so whether the appellant had wilfully concealed it from his trustee in bankruptcy. The evidence in the case warranted submission of both issues to the jury. If the money drawn from the bank account and invested in the Commercial Investment Corporation was in fact the appellant's money, the use of the wife's maiden name as holder of the stock and also as president of the company might well be taken as a method of covering up property that in fact belonged to the appellant. As for the bank account, the funds in it were nominally those of the wife; but the evidence indicated that in reality a large part of the funds were those of the appellant, deposited in the wife's account not for ordinary use by her but to remain the appellant's under cover of her name. He was then liable, contingently at least, for large amounts of money.

The appellant urges that if the moneys traced into the bank account were not his wife's, the only alternative is that the bulk of them belonged to the companies, Charles L. Martel, Inc., and Martel Motors, Inc., and the point is not without force. Most of the moneys came originally from persons who purchased automobiles at the premises where the companies successively carried on business, and in a number of instances the bills of sale handed to the purchaser gave the one or the other of the companies as the vendor. But the purchasers' checks were made out in favor of the appellant, and it is in evidence that the appellant instructed the bookkeeper to charge him personally for the shortages in the corporate accounts. The companies and their creditors, for all that appears, have made no claims to any of the property involved. The record reveals very little as to the financial affairs of the companies. Under the circumstances it was a logical inference that the checks credited to the bank account were the property of the appellant as opposed to the companies whose affairs he directed. One who organizes and operates corporations in the free and easy manner has no fair grievance when others refuse to take the corporations more seriously than he himself took them.

■ On the issue of ownership of the property as well as on the issue of conscious concealment, the devious methods

used by the appellant in depositing moneys in the bank account, the disappearance of records, the unsatisfactory excuses given, and the use of the wife's maiden name in abbreviated form in the Commercial Industrial Corporation were factors of weight in the government's case. While there was no direct proof as to the net worth of the Commercial Industrial Corporation at the time when the appellant's trustee in bankruptcy was appointed, the investment of $17,000 in the stock of that company a year earlier and the proof of its continued existence in business gave support for the inference that the stock had a substantial value when the trustee was appointed. The indictment charged that $25,000 was concealed, but the prosecution was not bound to prove concealment of property of that particular value.

We find no error in the record. The trial court was right in submitting the issues to the jury, and the conviction will be affirmed.